**UNITED STATES DISTRICT COURT**
**MIDDLE DISTRICT OF FLORIDA**
**ORLANDO DIVISION**

**MIRIAM BROWN o/b/o S. B.,**

      **Plaintiff,**

**-vs-**　　　　　　　　　　　　　　　　　　　　　　　　**Case No. 6:04-cv-1857-Orl-DAB**

**JO ANNE B. BARNHART, Commissioner**
**of Social Security,**

      **Defendant.**

_____

# MEMORANDUM OPINION & ORDER

On behalf of her niece (a minor for whom she is legal guardian), Plaintiff brings this action pursuant to the Social Security Act (the Act), as amended, Title 42 United States Code Section 405(g), to obtain judicial review of a final decision of the Commissioner of the Social Security Administration (the Commissioner) denying the claim for Supplemental Security Income (SSI) under the Act.

The record has been reviewed, including a transcript of the proceedings before the Administrative Law Judge (ALJ), the exhibits filed and the administrative record, and the pleadings and memoranda submitted by the parties in this case. Oral argument has not been requested.

For the reasons that follow, it is **ORDERED** that the decision of the Commissioner is **AFFIRMED**.

## *I. BACKGROUND*

### A.   Procedural History

On February 1, 2001, an application for childhood Supplemental Security Income (SSI) was protectively filed for the minor child, S. B. (the "Child"). R. 29-31. Plaintiff, Miriam Brown, is

S.B.'s aunt who is now pursuing this appeal[1], alleging that the Child was disabled since January 1, 2001 due to sleep walking, bad dreams, hallucinations, and fears. R. 33. Plaintiff's claim was denied initially and upon reconsideration. R. 63-64. On July 10, 2002, the Plaintiff timely requested a hearing before Administrative Law Judge, Arthur W. Stacey (hereinafter referred to as "ALJ") which was held on October 14, 2003. R. 103, 197-218. In a decision issued May 27, 2004, the ALJ found the Child not disabled as defined under the Act. R. 14-23. Plaintiff filed a Request for Review of Hearing Decision/Order, which the Appeals Council denied on November 5, 2004. R. 4-6. Plaintiff filed this action for judicial review on December 21, 2004. Doc. No. 1.

### B.     Medical History and Findings Summary

The Child's medical history is set forth in detail in the ALJ's decision. By way of summary, the Child complained of and was treated for major depression and mild asthma.

After reviewing the Child's medical records and the testimony of the Child, her aunt (Plaintiff) and her cousin, the ALJ found that the Child never engaged in substantial gainful activity. R. 22, Finding 2. The Child suffered from major depression, a "severe" medically determinable impairment, but did not have an impairment severe enough to meet or medically equal one of the impairments listed in Appendix 1, Subpart P, Regulations No. 4. R. 22, Finding 3 & 4. The ALJ further found that the Child's subjective complaints were credible only to the extent that were supported by the evidence of record. R. 22, Finding 6. The ALJ found that the evidence established the following functional limitations from the Child's impairments and reasonably related symptoms: no limitations in the domain of acquiring and using information; less than marked limitation of functioning in the domain

---

[1] Ms. Brown's daughter and the Child's cousin, Tameka Lewis, protectively filed the application. R. 29-31, 76. Ms. Brown stated at the hearing that she is the Child's legal guardian (R. 199) and documentation in the file concurs.

of attending and completing tasks; less than marked limitations in the domain of interacting and relating with others; no limitations in the domain of moving about and manipulating objects; less than marked limitation in the domain of caring for yourself; and less than marked limitation in the domain of health and physical well-being. R. 20-22.  Based on these limitations, the ALJ found that the Child's impairments did not functionally equal any listed impairment. R. 22.  Accordingly, the ALJ determined that the Child had not been under a disability at any time through the date of the decision. R. 22, Finding 7.

Plaintiff now asserts two errors.  First, Plaintiff contends that the ALJ improperly disregarded the evidence from other mental health professionals, relying solely on the consultative exam of Dr. Fleischmann. Second, Plaintiff contends that the ALJ did not properly discredit the Child's subjective complaints in finding her not disabled.  For the reasons that follow, the Commissioner's decision is **AFFIRMED**.

## *II.  STANDARD OF DISABILITY AND STANDARD OF REVIEW*

In order for an individual under the age of eighteen to be entitled to Supplemental Security Income payments, the Child must have a "medically determinable physical or mental impairment, which results in marked and severe functional limitations, and. . .which has lasted or can be expected to last for a continuous period of not less than 12 months." 42 U.S.C. § 1382c(a)(3)(C)(i); 20 C.F.R. § 416.906.  The rules[2] follow the three-step sequential evaluation, under which SSA will consider:

---

[2] On August 22, 1996, Congress enacted the Personal Responsibility and Work Opportunity Reconciliation Act of 1996 ("the 1996 Act"), which amended the statutory standard for children seeking SSI benefits based on disability such that a child seeking SSI benefits based on disability will be found disabled if he or she has a medically determinable impairment "which results in marked and severe functional limitations," and which meets the statutory duration requirement. *Brawdy v. Barnhart*, No. Civ.A. SA01-CA-0835F, 2003 WL 1955839, at *3-4 (W.D. Tex. Mar. 27, 2003) (internal citations omitted). The final rules became effective on January 2, 2001. *Id.*

(1) whether the child is working; (2) whether the child has a medically determinable "severe" impairment or combination of impairments; and (3) whether the child's impairment or combination of impairments meets, medically equals, or functionally equals the severity of an impairment in the listings. 20 C.F.R. § 416.924. Whether a child meets the "listing-level severity" standard is dependent upon whether the child has marked limitations in two broad areas of development or functioning or extreme limitation in one of those areas. 20 C.F.R. § 416.926a. Under the regulations for children, there are six domains used to determine a child's functional equivalence: (1) acquiring and using information; (2) attending and completing tasks; (3) interacting and relating with others; (4) moving about and manipulating objects; (5) caring for yourself; and (6) health and physical well-being. 20 C.F.R. § 416.926a.

The scope of this Court's review is limited to determining whether the ALJ applied the correct legal standards, *McRoberts v. Bowen*, 841 F.2d 1077, 1080 (11th Cir. 1988), and whether the findings are supported by substantial evidence, *Richardson v. Perales*, 402 U.S. 389, 390 (1971). "Substantial evidence is more than a scintilla, and must do more than create a suspicion of the existence of the fact to be established. It means such relevant evidence as a reasonable mind might accept as adequate to support a conclusion." *Walden v. Schweiker*, 672 F.2d 835, 838-39 (11th Cir. 1982)(internal quotations omitted).

The court must view the record as a whole, taking into account evidence favorable as well as unfavorable to the SSA's decision. *Walker v. Bowen*, 826 F.2d 996, 1000 (11th Cir. 1987). Even if the court finds that the evidence weighs against the SSA's decision, the court must affirm if the decision is supported by substantial evidence. *Allen v. Schweiker*, 642 F.2d 799, 800 (5th Cir. 1981); *see also Swindle v. Sullivan*, 914 F.2d 222, 225 (11th Cir. 1990); *Harwell v. Heckler*, 735 F.2d 1292,

1293 (11th Cir. 1984). The court may not reweigh the evidence or substitute its own judgment, even if the court finds that the weight of the evidence is against the SSA's decision. *Strickland v. Harris*, 615 F.2d 1103, 1106 (5th Cir. 1980). While there is a presumption in favor of the SSA's findings of fact, no such presumption attaches to the ALJ's legal conclusions. *Welch v. Bowen*, 854 F.2d 436, 438 (11th Cir. 1988); *Walker*, 826 F.2d at 999.

### III. ANALYSIS

**A.    The ALJ's reliance on the Dr. Fleischmann's consultative examination**

The Plaintiff argues that the ALJ erred by relying solely on the consultative examination of Dr. Fleischmann, who allegedly found the Child's condition to be less severe than the other mental health professionals (Dr. Arias and Ms. Walther) who examined or treated her. Both practitioners noted that the Child reported auditory hallucinations which would include voices threatening to kill her and her family. R. 124, 127, 141. Plaintiff contends that the ALJ improperly ignored these other reports.[3]

The Commissioner does not dispute that the ALJ gave significant weight to the opinions of Dr. Fleischmann, including the opinions as to the six domains of functioning (R. 182-85); however, this reliance was justified because Dr. Fleischmann is the only examining medical source who gave specific opinions concerning the six domains of functioning that the ALJ was required to analyze.

There was substantial evidence to support the ALJ's reliance on Dr. Fleischmann's report because it was as described by the ALJ, the "most recent" of the records, dated January 27, 2004 (received after the October 14, 2003 hearing). R. 22. The ALJ's reliance on this report over the other

---

[3] Plaintiff contends that the ALJ did not even mention them in the decision. However, he cited the Park Place treatment notes of Nurse Walther dated October 2003 in his analysis of the evidence as to the Child's ability to attend to and complete tasks. R. 20.

older reports was proper because it was further away in time from the deaths of the Child's brother (October 2000 – R. 123) and uncle (1998) and reflected the Child's current mental state, given therapy and the appropriate prescription medication regime.

Dr. Arias' consultative examinations of the Child were conducted nearly three years before, at the request of the Social Security Administration. On April 25, 2001, he diagnosed the Child with depression with psychotic features and bereavement secondary to the death of her brother and uncle. R. 125. When he examined the Child again on November 29, 2001, her prognosis remained guarded and it was noted that she would benefit from monthly psychiatric intervention to help ease perceptual disturbances and significant mood symptoms. R. 126-28; *see also* R. 125.

As the Commissioner points out, Dr. Arias' records reporting a more severe depressed condition are from 2001, much closer in time to the deaths of the child's brother (by gunshot) and uncle (murder) and reflect significant bereavement problems, especially for a younger child. R. 122-23, 125. However, the subsequent records from both Nurse Walther and Dr. Fleischmann show improvement. This is consistent with the non-examining psychologist's expectation on May 30, 2001 that "Parent [guardian's] reports at CE and on functional report are not credible and may reflect parent's own bereavement re: sibling. Greater weight is given to treating source records and daycare report. . . . This is certainly not going to persist for 12 months and is already improved to point of minimal functional restrictions (see daycare report)." R. 62 (emphasis in original).

Nurse Walther noted in June 2003 that the Child did well in school the previous year and was promoted to the second grade; she assigned the Child a Global Assessment of Functioning (GAF) score of 58. R. 138. In October 2003, Nurse Walther noted that the Child denied thoughts of hurting herself, hallucinations, or paranoia. R. 168; *see also* 169-71 (March-August 2003). Her concentration

and attention appeared to be good at school. R. 168. GAF scores during the Child's treatment with Nurse Walther in late 2002-2003 ranged from 55-58, which reflect moderate symptoms according to the American Psychiatric Association, Diagnostic & Statistical Manual of Mental Disorders 34 (4th ed. 2000) (DSM-IV-TR). R. 138 (June 2003), 140-43 (March 2003), 168 (October 2003), 169 (August 2003). These scores are consistent with the ALJ's finding of degrees of limitation of "less than marked." R. 17-23[4].

The ALJ properly relied on Dr. Fleischmann's report for findings in several of the six domains he was required to consider. The ALJ determined that the Child had no limitation in acquiring and using information (first domain) based on Dr. Fleischmann's report that the Child was alert and oriented upon examination with no overt symptoms of psychosis and had good recall for both recent and remote events, a full range of affect and appeared in no acute mental stress; and was attentive, cooperative and well socialized during the exam. R. 20, 183, 185. Additionally, the Child's kindergarten teacher (in April 2002) gave her a glowing report: the Child always stays on task; responds well to re-direction, "but not needed"; complies with all of the teacher's rules, helps others, encourages and guides others and is a leader, but also lets others lead as well; her behavior is "excellent;" she has the best work in the class, which is "neat, beautiful, Quality!"; and the Child "is one of the best behaved, sweetest, motivated students I have ever had." R. 87-89.

The ALJ properly found that the Child has a less than marked limitation in the second domain of attending to and completing tasks. R. 20. The ALJ relied on the Kindergarten teacher's responses (R. 20, 88) and treatment notes from Park Place Behavioral Health Care Center in October 2003

---

[4]Park Place Behavioral Center forms dated May 5, 2004 reflect that the Child had made "little/no progress . . . due to inconsistency in treatment." R. 188-89. This evidence was not before the ALJ.

reporting that the child's concentration and attention were good at school.  R. 20, 170.  Although the ALJ did not cite it (but had obviously reviewed it), Dr. Fleischmann's opinion was that the Child's degree of limitation in the area of attending and completing tasks was less than marked.  R. 185.

To find that the Child has "less than marked" limitation of functioning in how the child interacts and relates with others, the ALJ properly relied on the evidence from Dr. Fleischmann's report that: the child had occasional disciplinary referrals from school for fighting and other interpersonal conflicts, lived in a home with an aunt, grandfather, a 15 year old sister and a 16 year old female cousin, complained of being teased at school and is overly sensitive to typical peer provocations, and Dr. Fleischmann's opinion that the child had a "less than marked" degree of limitation in this area.  R. 20, 183-85.

The ALJ found Plaintiff had no limitation in moving about and manipulating objects because the Child had not alleged or documented physical problems and had not alleged problems with manipulation of things.  R. 21.  The ALJ also found that the Child had a "less than marked" limitation in the domain of caring for herself.  Although earlier documentation (dated October 10, 2001) submitted to SSA by her relatives stated that the Child had limited physical abilities, the Child testified that she was in regular classes at school, and liked to play on the swings and the monkey bars.  R. 204.  Plaintiff testified that the Child could not bathe herself or tie her shoe laces.  R. 214.  However, even with these limitations acknowledged during the consultative examination, Dr. Fleischmann found that the Child had no limitation in her ability to move about and manipulate objects and less than marked limitations in her ability to care for herself.  R. 183-85.

For the domain of the Child's health and physical well-being, the ALJ found a less than marked limitation based on her diagnosis of major depression, severe with psychotic features, and

occasional asthma. R. 22. The ALJ noted that the Child was on a treatment regime for depression consisting of medication and counseling. The ALJ relied on Dr. Fleischmann's opinion that the Child's medical history was unremarkable with the exception of occasional asthma flare-ups (R. 183), and the Child's degree of limitation in the area of health and physical well-being was less than marked. R. 185. This evidence provides substantial support for the ALJ's decision that the child has a less than marked limitation in this domain (Tr. 22).

Dr. Fleischmann's opinion, the kindergarten teacher's assessment (and the Child's continued ability to "do well in school" – R. 138), along with Nurse Walther's reports of GAF in the 55-58 range are substantial evidence which support the ALJ's finding of no limitation or "less than marked" limitations the six domains and, thus, the determination that the Child has no marked or extreme limitations and is not disabled.

**B.    Credibility**

Plaintiff contends that the ALJ erred by failing to state why the Child's testimony was not fully
credible and what he found about her testimony that was not consistent with the medical evidence. The ALJ found that the Child's subjective complaints were considered credible only to the extent they were supported by the evidence of record as summarized in the text. R. 22, Finding 6.

Where an ALJ decides not to credit a claimant's testimony, the ALJ must articulate specific and adequate reasons for doing so, or the record must be obvious as to the credibility finding. *Jones v. Department of Health and Human Services*, 941 F.2d 1529, 1532 (11th Cir. 1991) (articulated reasons must be based on substantial evidence); *Foote v.Chater*, 67 F.3d 1553, 1561-62 (11th Cir. 1995).

As the Commissioner correctly points out Plaintiff fails to state what specific subjective complaints made by the Child at the hearing should have been accepted by the ALJ, or any allegations made by the child that would change the administrative result. The ALJ found in the Child's favor in steps one and two (she was not working and she had a severe impairment); thus, the only issue was whether the Child's impairment medically or functionally equaled the severity of an impairment in the Listings.

Plaintiff has not pointed to any specific allegations by the Child of any marked or extreme limitations in the six domains that were specifically rejected by the ALJ. Although Plaintiff testified at the hearing that the Child fights violently with her older sister, the Child testified[5] she got along with the family and classmates, Plaintiff admitted that the Child was well behaved at school (R. 213) and the Child's kindergarten teacher stated that her behavior was excellent and she had no problems interacting with peers – she was "one of the best behaved" and "sweetest" students the teacher had "ever had." R. 87, 89. The ALJ's determination somewhat limiting the Child's credibility based on the evidence in the record was proper.

## *IV. CONCLUSION*

The record in this case shows that the Child has experienced traumas and bereavement that have caused her to require mental health treatment; in spite of these problems she has been successful in school. The ALJ appropriately considered her circumstances and analyzed them in relation to the exacting disability standard under the Social Security Act. For the reasons set forth above, the ALJ's decision is consistent with the requirements of law and is supported by substantial evidence.

---

[5] Although the Child's response is "inaudible," the ALJ would query further when the Child's answer was negative, and he did not do so in this case; presumably the answer was in the affirmative. R. 207.

Accordingly, the Court **AFFIRMS** the Commissioner's decision pursuant to sentence four of 42 U.S.C. § 405(g). The Clerk of the Court is directed to enter judgment consistent with this opinion and, thereafter, to close the file.

    **DONE** and **ORDERED** in Orlando, Florida on January 13, 2006.

*David A. Baker*

    DAVID A. BAKER
UNITED STATES MAGISTRATE JUDGE

Copies furnished to:

Counsel of Record